IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GEORGE MAKRIS, et al.,

    Plaintiffs,

    v.                                            CIVIL NO. 08-1718 (RLA)

SPENSIERI PAINTING, LLC.,
et al.,

    Defendants.

**ORDER DENYING MOTION TO DISMISS
FILED BY CORNELL UNIVERSITY AND NAIC
STAYING CONTROVERSY REGARDING DBA EMPLOYER IMMUNITY
SETTING DEADLINE FOR FILING JOINT STATUS REPORT**

Codefendants CORNELL UNIVERSITY and its NATIONAL ASTRONOMY AND IONOSPHERE CENTER ("NAIC") (collectively identified as "CORNELL") have moved the court to dismiss the instant proceedings pursuant to the provisions of Rules 12(b)(1) and (b)(6) Fed. R. Civ. P. In support of their request, movants argue that exclusive jurisdiction over the claims asserted against them lies with the Defense Base Act, 42 U.S.C. § 1651 *et seq.* ("DBA"). Petitioners further contend that plaintiffs are covered employees under the DBA and CORNELL having provided benefits for their work-related injuries, is entitled to immunity from tort liability in these proceedings.

Both plaintiffs and codefendant SPENSIERI PAINTING, LLC ("SPENSIERI") have opposed the aforementioned request alleging *inter alios* that: the DBA is inapposite to the facts of this case because the labor performed did not involve public work; movant's request for

**CIVIL NO. 08-1718 (RLA)**                                                                 **Page 2**

dismissal should be denied because it improperly relies on material outside the complaint and, in the alternative, that they should be allowed an opportunity to conduct discovery prior to the court ruling on the motion.

### PROCEDURAL BACKGROUND

Plaintiffs, GEORGE MAKRIS, JOHN SIMIONE-FILARETOU and CESAR GUEVARA, instituted the instant proceedings against CORNELL and SPENSIERI seeking relief under art. 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141 (1990), our local tort provision, for damages allegedly sustained during a work-related accident which occurred on July 8, 2007, at the Arecibo Observatory, in Arecibo, Puerto Rico.

Subsequently, SPENSIERI impleaded TSA CONSTRUCTION, INC. and DIMITROS TSALICKIS as third-party defendants.

### RULE 12(b)(1) AND 12(b)(6) STANDARD

In addition to their arguments addressing the merits of CORNELL's motion, plaintiffs and codefendant SPENSIERI have objected to CORNELL's request arguing that petitioner improperly submitted extra-pleading material for the court's consideration in support of its motion to dismiss.

The proper vehicle for challenging a court's subject-matter jurisdiction is not Rule 12(b)(6) Fed. R. Civ. P., but rather Rule 12(b)(1). "[T]here are distinctions that should be observed

**CIVIL NO. 08-1718 (RLA)**                                                                **Page 3**

between failure to state a claim and lack of jurisdiction." Alberto San, Inc. v. Consejo de Titulares, 522 F.3d 1, 3 (1st Cir. 2008).

In disposing of motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court will accept all factual allegations as true and will make all reasonable inferences in plaintiff's favor. Frazier v. Fairhaven School Com., 276 F.3d 52, 56 (1st Cir. 2002); Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001); Berezin v. Regency Sav. Bank, 234 F.3d 68, 70 (1st Cir. 2000); Tompkins v. United Healthcare of New England, Inc., 203 F.3d 90, 92 (1st Cir. 2000).

Our scope of review under this provision is a narrow one. Dismissal will only be granted if after having taken all well-pleaded allegations in the complaint as true, the court finds that plaintiff is not entitled to relief under any theory. Brown v. Hot, Sexy and Safer Prods., Inc., 68 F.3d 525, 530 (1st Cir. 1995) *cert. denied* 116 S.Ct. 1044 (1996); Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994). Our role is to examine the complaint and to determine whether plaintiff has adduced sufficient facts to state a cognizable cause of action. Alternative Energy, 267 F.3d at 36. The complaint will be dismissed if the court finds that under the facts as pleaded plaintiff may not prevail on any possible theory. Berezin, 234 F.3d at 70; Tompkins, 203 F.3d at 93.

Further, when disposing of a motion to dismiss under Rule 12(b)(6), the court may look at matters outside the pleadings under

limited circumstances such as where "'a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).'" Perry v. New England Bus. Serv., Inc., 347 F.3d 343, 345 n.2 (1st Cir. 2003) (citing Beddall v. State St. Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)). It may consider those facts which have been "fairly incorporated within [the complaint] and matters susceptible to judicial notice" without converting the request into a summary judgment petition. In re Colonial Mortgage, 324 F.3d 12, 15 (1st Cir. 2003).

On the other hand, when ruling on motions to dismiss for lack of subject matter jurisdiction, the court is not constrained to the allegations in the pleadings as with Rule 12(b)(6) petitions. The plaintiff's jurisdictional allegations are given no presumptive weight and the court is required to address the merits of the jurisdictional claim by resolving the factual disputes between the parties.

Consonant therewith, the court may review extra-pleading material without transforming the petition into a summary judgment vehicle. Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002); Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996). "[T]here are times when a court should take into account documents beyond the

**CIVIL NO. 08-1718 (RLA)**                                                          **Page 5**

complaint in evaluating whether a Fed. R. Civ. P. 12 motion should be granted. One such situation occurs when there is some doubt about the court's subject matter jurisdiction." Coyne v. Cronin, 386 F.3d 280, 286 (1st Cir. 2004) (internal citations omitted).

Even though the court is not circumscribed to the allegations in the complaint when deciding a jurisdictional issue brought pursuant to Rule 12(b)(1) and that it may also take into consideration "extra-pleading material", 5A Charles Allan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1990) p. 213, "[w]here movant has challenged the factual allegations of the party invoking the district court's jurisdiction, the invoking party 'must submit affidavits and other relevant evidence to resolve the factual dispute regarding jurisdiction.'" Johnson v. United States, 47 F.Supp.2d 1075, 1077 (S.D.Ind. 1999) (citing Kontos v. United States Dept. of Labor, 826 F.2d 573, 576 (7th Cir. 1987)).

> In ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff. In addition, the court may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in the case.

Aversa v. United States, 99 F.3d at 1210-11 (citations omitted). *See also*, Shrieve v. United States, 16 F.Supp.2d 853, 855 (N.D. Ohio 1998) ("In ruling on such a motion, the district court may resolve factual issues when necessary to resolve its jurisdiction.")

Federal courts are courts of limited jurisdiction and hence, have the duty to examine their own authority to preside over the cases assigned. "It is black-letter law that a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction." McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004). *See also*, Bonas v. Town of N. Smithfield, 265 F.3d 69, 73 (1st Cir. 2001) ("Federal courts are courts of limited jurisdiction, and therefore must be certain that they have explicit authority to decide a case"); Am. Fiber & Finishing, Inc. v. Tyco Healthcare Gp. LP, 362 F.3d 136, 138 (1st Cir. 2004) ("[i]n the absence of jurisdiction, a court is powerless to act.").

If jurisdiction is questioned, the party asserting it has the burden of proving a right to litigate in this forum. McCulloch v. Velez, 364 F.3d at 6. "Once challenged, the party invoking diversity jurisdiction must prove [it] by a preponderance of the evidence." Garcia Perez v. Santaella, 364 F.3d 348, 350 (1st Cir. 2004). *See also*, Mangual v. Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003) (party invoking federal jurisdiction has burden of establishing it).

Based on the foregoing, it appearing that CORNELL has put at issue our jurisdiction to entertain DBA coverage in this case, we may

**CIVIL NO. 08-1718 (RLA)**                                                               **Page 7**

take into consideration the extra pleading material currently before us in ruling on its request for dismissal under Rule 12(b)(1).[1]

### FACTUAL BACKGROUND

Plaintiffs were employed by codefendant SPENSIERI to carry out a sandblasting and painting job at the Arecibo Observatory pursuant to SPENSIERI's contract with CORNELL.[2] On July 8, 2007, while plaintiffs were applying a coat of paint to part of the radio telescope atop a two-point adjustable suspension scaffold suspended approximately 35 feet above the surface of the telescope platform, the cable snapped, causing them to fall and sustain severe injuries.

CORNELL had previously entered into a Cooperative Agreement for the Management and Operations of the National Astrology and Ionosphere Center with the NATIONAL SCIENCE FOUNDATION ("NSF"), a federal agency of the United States.[3] In pertinent part, the Program Description of the Cooperative Agreement reads as follows:

> The National Astronomy and Ionosphere Center (the Center or NAIC), is a Federally Funded Research and Development Center (FFRDC) operated by Cornell University - Endowed, through Cooperative Agreement with the National Science Foundation. The Center consists of staff employed by

---

[1] Plaintiffs' assertion of diversity jurisdiction stands undisputed.

[2] See Arecibo Observatory Telescope Painting Project, Contract No. C062787 dated November 21, 2006 (docket No. 14-3).

[3] Docket No. 14-6.

**CIVIL NO. 08-1718 (RLA)**                                                                 **Page 8**

> Cornell University and Government-owned facilities established for the conduct of research in radio and radar astronomy and space and atmospheric sciences and to support and stimulate research by the U.S. and international research community in these fields. The principal research facilities are located in Arecibo, Puerto Rico.

Docket No. 14-9 p.5.

Pursuant to this agreement, NAIC was created as a national research center to be operated by CORNELL. *Inter alios*, NAIC operates the Arecibo Observatory, the world's largest single-dish radio telescope. See http://www.naic.edu.

Even though SPENSIERI's insurer had issued a Certificate of Liability Insurance for workers' compensation in connection with the CORNELL contract on January 17, 2007,[4] it subsequently declined coverage for the accident at issue based on geographical reasons. In this regard, in a letter from the broker dated September 12, 2007, CORNELL's counsel was advised as follows:

> The policy issued for Spensieri Painting LLC through Commerce & Industry Insurance (AIG) covers the insured's employees for work in New York, Florida, Virginia and Georgia. **Puerto Rico is outside the policies covered territories**.

---

[4] See Certificate of Liability Insurance (docket No. 14-9).

Letter addressed to CORNELL subscribed by KRISTEN JULIANA-HEYDENS (docket No. 14-9) (emphasis ours).

Thereafter, on September 28, 2007, THE INSURANCE COMPANY OF STATE OF PA issued SPENSIERI the pertinent Certificate for workers' compensation covering labor carried out under the contract with CORNELL and making specific reference to Defense Base Act coverage.[5]

At the time of the accident at issue in this litigation CORNELL did have in place DBA insurance coverage through ACE USA.[6]

### DEFENSE BASE ACT

The Defense Base Act, 42 U.S.C. § 1651 *et seq.*, extends coverage of the provisions of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* ("LHWCA") to employees engaged in public work overseas for a company under contract or subcontract with the United States Government, a department or agency thereof. 42 U.S.C. § 1651(a). In essence, the statute mandates that United States contractors and subcontractors procure workers' compensation for their employees.

"The DBA is a federal workers' compensation statute that incorporates the provisions of the Longshore and Harbor Workers' Compensation Act". Colon v. United States, 223 F.Supp.2d 368, 370

---

[5] Certificate of Liability of Insurance (docket No. 14-9).

[6] See Renewal Certificate for Policy No. HOTD36900040 issued by ACE AMERICAN INSURANCE COMPANY ("ACE") in effect from October 15, 2006 to October 15, 2007 (docket No. 14-10).

**CIVIL NO. 08-1718 (RLA)**                                                              **Page 10**

(D.P.R. 2002). "Congress passed the Defense Base Act in order to provide workers' compensation coverage for certain classes of employees working outside the continental United States. Rather than draft a new workers' compensation scheme, Congress used the DBA to extend the LHWCA to apply to the newly-covered workers." Kalama Serv., Inc. v. Dir., Office of Workers' Comp. Programs, 354 F.3d 1085, 1090 (9th Cir. 2004) (internal citations omitted).

In effect since 1941, the DBA was initially meant to provide coverage protection to civilians employed in military bases during World War II. Through time its coverage has been extended to include employees working outside the continental United States who provide a myriad of contractual services. "Since enactment, the scope of the DBA has expanded to cover the wide range of contracts which private firms now undertake; these contracts include construction projects, support services, such as food, accommodations, and sanitation for troops on the battlefield, and intelligence gathering, communications, weapons maintenance, and even troop training." Greta S. Milligan, *The Defense Base Act: an Outdated Law and its Current Implications*, 86 U. Det. Mercy L. Rev. 407, 411 (Spring 2009) (citations and internal quotation marks omitted).

"The purpose of the Defense Base Act is to provide uniformity and certainty in availability of compensation for injured employees on military bases outside the United States." Davila-Perez v. Lockheed Martin Corp., 202 F.3d 464, 468 (1st Cir. 2000).

**CIVIL NO. 08-1718 (RLA)**                                                                                       **Page 11**

---

"Puerto Rico is... covered by the Defense Base Act". <u>Davila-Perez</u>, 202 F.3d at 468; <u>Colon</u>, 223 F.Supp.2d at 370.

### Public Work

In order to qualify for protection under the DBA, the injured or deceased worker must have been engaged in "public work" which is defined in the statute as "any fixed improvement or any project... involving construction, alteration, removal or repair for the public use of the United States... including but not limited to projects or operations under service contracts...." 42 U.S.C. § 1651(b)(1).

"[T]he DBA provides an employee's exclusive remedy if the employee was engaged in employment outside the United States under a contract between his employer and the United States for the purpose of engaging in public work". <u>Fisher v. Halliburton</u>, 390 F.Supp.2d 610, 613 (S.D.Tex. 2005). "[T]o be covered, a service contract must be connected either with a construction project or with a national defense activity. Service contracts lacking a construction or national defense nexus simply fall beyond the boundaries of the DBA." <u>Univ. of Rochester v. Hartman</u>, 618 F.2d 170, 173 (2nd Cir. 1980). "The sine qua non of the Act's applicability has always been a military or a United States government construction connection. There is no reason to suppose that a service contract is exempt from this prerequisite nexus." <u>Hartman</u>, 618 F.2d at 173-74.

### Exclusive Remedy

The DBA specifically provides that liability under the statute "shall be exclusive and in place of all other liability of such employer, contractor, subcontractor, or subordinate contractor to his employees (and their dependents) coming within the purview of this chapter, under the workmen's compensation law of any State, Territory or other jurisdiction irrespective of the place where the contract of hire of any such employee may have been made or entered into." § 1651(c). "[T]he DBA provides an employee's exclusive remedy if the employee was engaged in employment outside the United States under a contract between his employer and the United States for the purpose of engaging in public work, including contracts". Fisher v. Halliburton, 390 F.Supp.2d at 613.

The immunity provided by the DBA is contingent upon the employer obtaining insurance coverage for the injured or deceased employee.[7] "[A]n employer that secures insurance coverage for its employees as required by the DBA is entitled to immunity under the LHWCA." Colon, 223 F.Supp.2d at 370. *See also,* Davila-Perez, 202 F.3d at 466, where the court found the employer immune from suit because it had

---

[7] In this regard, the LHWCA provides at § 905(a):

> The liability of an employer prescribed in section 904... shall be exclusive and in place of all other liability of such employer to the employee... except... if an employer fails to secure payment of compensation as required by this chapter.

**CIVIL NO. 08-1718 (RLA)**                                                    **Page 13**

"procured workers' compensation and employers' liability insurance from CIGNA, pursuant to its contract requirements with the Navy."

The DBA requires that government contractors guarantee insurance coverage for their employees. In the event that a subcontractor does not comply with the insurance requirement, the contractor is then under an obligation to obtain one.

> Every employer shall be liable for and shall secure the payment to his employees for the compensation payable under [the DBA]. In the case of an employer who is a subcontractor, only if such subcontractor fails to secure the payment of compensation shall the contractor be liable for and be required to secure the payment of compensation.

33 U.S.C. § 904(a).

Having arranged for insurance compensation due to a subcontractor's failure to do so, the contractor is then entitled to the statutory employer defense as provided in 33 U.S.C. § 905(a) which, in pertinent part reads: "a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 904". In those instances, the immunity benefits extend exclusively to the entity paying for the compensation thus leaving the subcontractor open to a suit for damages by the injured employee or his estate in case of death. *See* <u>Cintron-Rodriguez v. United States</u>, 995 F.Supp. 238, 241 (D.P.R. 1998) ("Under the LHWCA, a contractor is only

**CIVIL NO. 08-1718 (RLA)**                                                      **Page 14**

considered a statutory employer exempt from suit by an injured employee if the contractor was the one who secured the payment of compensation because the subcontractor failed to do so"); Rivera-Carmona v. United States, 858 F.Supp. 295, 296 (D.P.R. 1994) ("United States is not entitled to the statutory employer immunity it asserts because the subcontractor did not fail to secure workers' compensation for plaintiff under the LHCWA").

CORNELL posits that we have no jurisdiction to entertain plaintiffs' tort claims against it because these are precluded by the DBA inasmuch as it had procured workers' compensation insurance for the contracted work at the Arecibo Observatory.[8] Even though we concede that the remedies provided by the DBA for work-related injuries are exclusive in situations where the employer has procured the pertinent insurance coverage, the courts may still examine all pertinent information to determine whether or not there is DBA coverage when disposing of an immunity defense raised by a defendant in judicial proceedings. See i.e., Davila-Perez (concluding that employer was entitled to immunity from tort claims based on the LHWCA). Hence, we reject CORNELL's lack of jurisdiction argument.

---

[8] SPENSIERI further challenges CORNELL's immunity claim alleging that: (1) its contract with CORNELL did not cite mandatory DBA language as required by 48 C.F.R. §§ 28.309 and 52.228-3 and (2) an issue of fact remains as to whether CORNELL secured compensation "for the benefit of the subcontractor [SPENSIERI]" as allowed in the LWHCA, 33 U.S.C. § 904(a).

**CIVIL NO. 08-1718 (RLA)**                                              **Page 15**

### PARALLEL WORKERS' COMPENSATION PROCEEDINGS

It is important to note, however, that proceedings seeking compensation regarding all plaintiffs to this litigation have been instituted with the UNITED STATES DEPARTMENT OF LABOR ("US-DOL") pursuant to the DBA.[9] Additionally, a claim for state workers' compensation benefits was filed in New York on behalf of plaintiff MAKRIS.

To this effect, the parties have submitted the following documents evidencing administrative determinations regarding workers' compensation proceedings: (1) letter from the US-DOL dated January 26, 2009 acknowledging that MAKRIS is entitled to benefits under the LHWCA,[10] (2) application for Board Review of the US-DOL determination dated February 26, 2009,[11] (3) New York Workers' Compensation Administrative Review Division decision dated February 27, 2009, concluding that DBA applies to the claims of plaintiff MAKRIS[12] and

---

[9] These administrative proceedings have been assigned the following numbers:

    GEORGE MAKRIS            -    OWCP No. 02-178184
    CESAR GUEVARA            -    OWCP No. 02-178185
    JOHN SIMIONE FILARETOU   -    OWCP No. 02-178186

[10] Docket No. 44-3.

[11] Docket No. 44-3.

[12] Docket No. 46-2.

**CIVIL NO. 08-1718 (RLA)**                                                                 **Page 16**

(4) SPENSIERI's appeal of this determination to the Supreme Court of the State of New York.[13]

Apart from the judicial review instituted under the New York workers' compensation statute, administrative coverage determinations under the DBA are also subject to internal review processes as well as judicial scrutiny. As discussed *ante*, the DBA incorporates the provisions of the LHWCA.[14] In 1972, the review mechanism applicable to claims covered by the LHWCA was amended. The amended statute established a Benefits Review Board responsible for examining benefits determinations made by administrative law judges and then direct appeal to the federal appellate courts rather than to the United States district courts as previously mandated.[15] This new judicial review provision, however, does not mention cases covered by the DBA which has generated a controversy regarding the proper forum for seeking judicial review of the agency's determinations, i.e., district courts versus courts of appeals. *See* Claire Been, *Bypassing Redundancy: Resolving the Jurisdictional Dilemma under the Defense Base Act*, 83 Wa.L.R. 219 (May, 2008). Most courts which have grappled with the issue have concluded that, because the DBA still provides

---

[13] Docket No. 46-3.

[14] See 42 U.S.C. § 1651(a).

[15] See 33 U.S.C. § 921(b) and (c).

that judicial review lies with the district courts,[16] the LHWCA amendment is inapposite.[17]

The review currently pending before the Supreme Court of the State of New York - which specifically deals with DBA coverage regarding a plaintiff herein - raises a palpable specter of inconsistent findings between the state and federal fora should we decide to proceed to rule on this issue. At the same time, there is already in place a US-DOL determination regarding coverage currently subject to an administrative review. Our delving into the coverage controversy at this time would undoubtedly interfere with the comprehensive review scheme provided for in the DBA.[18]

Faced with this procedural scenario, we find it best to deny CORNELL's petition for dismissal on immunity grounds at this time in order to allow all parallel determinations to come to an end rather than venturing on the same path as other administrative and/or judicial entities thereby duplicating the proceedings and running the risk of reaching inconsistent results.

---

[16]   See 42 U.S.C. § 1653(b).

[17]   *See* ITT Base Serv. v. Hickson, 155 F.3d 1272, 1275 (11th Cir. 1998); Lee v. Boeing Co., 123 F.3d 801, 805 (4th Cir. 1997); AFIA/CIGNA Worldwide v. Felkner, 930 F.2d 1111, 1116 (5th Cir. 1991); Home Indem. Co. v. Stillwell, 597 F.2d 87, 90 (6th Cir. 1979). *Contra* Pearce v. Dir., Office of Workers' Comp. Programs, 603 F.2d 763, 770 (9th Cir. 1979).

[18]   We have no information regarding the finality of the US-DOL coverage determination.

**CIVIL NO. 08-1718 (RLA)**                                                            **Page 18**

**CONCLUSION**

Based on the foregoing, the Motion to Dismiss filed by CORNELL UNIVERSITY and NAIC (docket No. **12**)[19] is **DENIED**.

It is further ORDERED that the controversy regarding DBA employer immunity is hereby **STAYED** pending final resolution of all related proceedings pertaining to plaintiffs' DBA workmen's compensation coverage.

It is further ORDERED that the parties shall file a Joint Status Report, **no later than December 15, 2009,** advising the court of the status of the US-DOL and the New York judicial proceedings regarding DBA coverage with their suggestions on how to proceed in this case.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 17th day of November, 2009.

                                                    S/Raymond L. Acosta
                                                      RAYMOND L. ACOSTA
                                      United States District Judge

---

[19] See Memorandum of Law (docket No. **13**); Affirmation of KEITH L. FLICKER (docket No. **14**); Affidavit of WILSON A. ARIAS (docket No. **15**); SPENSIERI's Opposition (docket **25**); Plaintiffs' Opposition (docket No. **29**); Reply (docket No. **33**); Reply Affirmation of KEITH L. FLICKER (docket No. **34**); SPENSIERI's Surreply (docket No. **35**); Motion to Supplement (docket No. **40**); Reply (docket No. **44**); Surreply (docket No. **45**); Second Motion to Supplement (docket No. **46**) and Plaintiffs' Opposition (docket No. **47**).